**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION**

---

**KATHRINE MAE MCKEE,**

           **Plaintiff,**

     **v.**

**WILLIAM H. COSBY, JR.,**

          **Defendant.**

                        **Case No.: 3:15-cv-30221-MGM**

---

**WILLIAM H. COSBY, JR'S MEMORANDUM IN SUPPORT OF HIS
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff alleges defamation based on a letter sent by Defendant's attorney to the *New York Daily News*. The letter—sent solely to the *Daily News* and explicitly marked "confidential"—criticized the newspaper's treatment of Plaintiff's allegations against Defendant. The letter pointed out publicly available facts about Plaintiff that the *Daily News* could have found if it had conducted an investigation, demanded a retraction, and threatened suit against the paper.

Under applicable state and federal law, including the First Amendment, Plaintiff's defamation claim should be dismissed. First, Plaintiff has failed to actually identify any statement that she claims defamed her. This is no mere technicality. As the First Circuit has held, identification of allegedly defamatory statements and their context is required to safeguard essential First Amendment rights.

Second, the letter on which Plaintiff's lawsuit relies is not defamatory. Despite expressing skepticism about Plaintiff's claims, the letter does not, as Plaintiff broadly asserts, accuse Plaintiff of lying about Defendant. Instead, the letter at issue criticizes the *Daily News* for seemingly failing to conduct any investigation before publishing Plaintiff's accusations. This is a constitutionally protected opinion about the *Daily News*' journalism; it is not defamation of Plaintiff.

Third, on its face, the letter is written in anticipation of litigation against the *Daily News*, and thus is privileged under applicable state law. Indeed here, even a false statement made in contemplation of litigation is privileged, and any doubt is to be construed in favor of that privilege.

Accordingly, because Plaintiff has failed to state a defamation claim, and cannot state a claim based on the letter at issue in her complaint, her complaint should be dismissed with prejudice.

## PLAINTIFF'S ALLEGATIONS

*Plaintiff's Accusations Against Defendant Cosby.*  Plaintiff alleges she first met Bill Cosby in or about 1964, when she was working as an aspiring actress and showgirl in Las Vegas, Nevada.  (Compl. ¶ 8.)  Ten years later, Plaintiff says she met with Mr. Cosby at a hotel room in Detroit, Michigan, before they both headed to a boat party on the Detroit River.  (*Id.* ¶¶ 10, 12.)  When they met, Mr. Cosby allegedly raped Plaintiff while they were standing near his hotel room door.  (*Id.* ¶¶ 12-20.)  After the "violent," "shocking," "scary and horrible" incident was over (*id.* ¶ 20), Plaintiff went to Mr. Cosby's bathroom to compose herself, shared an elevator with Mr. Cosby down to the lobby of the hotel, and then accompanied him to the boat party, though he was "rude and cold toward [her] the rest of the night."  (*Id.* ¶ 22; *see also* Exhibit A at 3.)

*Martin Singer's Letter to the Daily News.*  Plaintiff alleges that, on December 22, 2014, the *New York Daily News* published a story ("Story") that included portions of an interview with Plaintiff (among other women) in which stated that Mr. Cosby had sexually assaulted her. (Compl. ¶ 22; *see also* Exhibit A.)  That same day, in response to the Story, Mr. Cosby's attorney, Martin Singer, wrote a letter to the *Daily News*.  (Compl. ¶ 23.)  According to Plaintiff, the letter "denied that [Mr. Cosby] raped Ms. McKee," called her "a liar (directly and indirectly)," and made "other false statements" about Plaintiff.  (*Id.*)

Plaintiff's complaint neither quotes nor attaches Mr. Singer's letter.  The letter on which Plaintiff appears to rely (the "Singer Letter," attached hereto as Exhibit B), however, contradicts

the allegations in the complaint.[1]  The Singer Letter was sent to the *Daily News*' General

Counsel and its West Coast Bureau Chief, and demanded that the *Daily News* publish a retraction

and correction to the Story.  (*See* Exhibit B at 1, 4.)  The Singer Letter was prominently marked

as a "Confidential Legal Notice" and that its "Publication Or Dissemination [Was] Prohibited."

(*See id.* at 1.)  In its entirety, the Singer Letter states as follows:

[Remainder of page intentionally left blank]

---

[1] In reviewing the complaint pursuant to a Rule 12(b)(6) motion, this Court "may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment." *See Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (citing *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1220 (1st Cir.1996));  *see also Yacubian v. United States*, 750 F.3d 100, 108 (1st Cir. 2014) ("'[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.'") (citing *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 229 n.1 (1st Cir. 2013)).   Plaintiff's complaint relies on the Singer Letter, as well as media reports surrounding her public allegations.  Thus, this Court may review and consider Exhibits A through C, filed concurrently herewith, without converting this motion to dismiss into one for summary judgment.

**LAVELY & SINGER**
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
SUITE 2400
2049 CENTURY PARK EAST
LOS ANGELES, CALIFORNIA 90067-2906
TELEPHONE (310) 556-3501
FACSIMILE (310) 556-3615
www.LAVELYSINGER.com

JOHN H. LAVELY, JR.
MARTIN D. SINGER
BRIAN G. WOLF
LYNDA B. GOLDMAN
MICHAEL D. HOLTZ
PAUL N. SORRELL
MICHAEL E. WEINSTEN
EVAN N. SPIEGEL

TODD S. EAGAN=
ANDREW B. BRETTLER*
DAVID B. JONELIS
ZEV F. RABEN=
JONATHAN M. KLEIN

ALLISON S. HART
HENRY L. SELF, III
OF COUNSEL.

= ALSO ADMITTED IN NY
* ALSO ADMITTED IN NY AND NJ

December 22, 2014

**CONFIDENTIAL LEGAL NOTICE**
**PUBLICATION OR DISSEMINATION IS PROHIBITED**

**VIA EMAIL:** calderman@nydailynews.com
legal@nydailynews.com

Cyna J. Alderman, Esq.
SVP and General Counsel
Daily News, L.P.
4 New York Plaza, 6th Floor
New York, NY 10004

**VIA EMAIL:** ndillon@nydailynews.com

Ms. Nancy Dillon
West Coast Bureau Chief
New York Daily News

Re:    Bill Cosby / *New York Daily News*, Daily News, L.P., *et al.*
        Our File No.: 980-49

Dear Ms. Alderman and Ms. Dillon:

        We are litigation counsel to Bill Cosby.  The *New York Daily News* engaged in reckless conduct by publishing a malicious defamatory article with Kathrine McKee's wild allegations about my client accusing him of rape.  Easily available public information, including Ms. McKee's own laudatory words about Mr. Cosby, belie the *Daily News*' Story. The *Daily News* could have done a simple Google search to learn that her story lacks credibility.  What would you have found?

- Ms. McKee's published statements in 2010 confirm that she counts Bill Cosby as a *friend*, and that he is among a group of *"very wonderful, lovely men" whom she says "treated me wonderfully"*.[1]

- A year ago, Ms. McKee "liked" one of Mr. Cosby's YouTube comedy videos and posted a fond message wanting to get in touch with him, saying "Hey Bill.......I am trying to reach you"[2]

- On a promotional webpage for an acting "Master Class" with Ms. McKee "For the period: Dec. 16-22, 2014," she touts her association with Mr. Cosby, saying she "has enjoyed a 40-year career in show business" and has "worked with such legends as ... Bill Cosby"[3]

- Ms. McKee has admitted, *"I had to do a lot of lying"* and *"lies landed her a job"* as a Vegas showgirl[4]

Cyna J. Alderman, Esq.
Ms. Nancy Dillon
Re:    Bill Cosby / *New York Daily News,* Daily News, L.P., *et al.*
December 22, 2014
Page 2

---

- This month, Ms. McKee posted on her own Google+ page a 1970 video clip of herself acting with my client on *The Bill Cosby Show*, with her gloating caption, "That's me with Bill Cosby 1970"[3]

- Ms. McKee has said about the time while she was Sammy Davis, Jr.'*s "road wife,"* "it was very common to be in and out of affairs" and "As far as I'm concerned, my life has been wonderful. It's been blessed with lovely, wonderful men. I was free, and single and *I had fun and I had a wonderful life*"[6]

- Her own younger sister, Lonette, who worked as Mr. Cosby's secretary,[7] has said about Kathrine McKee during the relevant era that her "older sister, she was walking on the wild side, was always wild, was always a rebel, always doing inappropriate things, never conformed, thought she could break all the rules and did."[8]

Ms. McKee's never-before-heard tale about something she claims happened back in the 1970's is completely contradicted by her own prior published statements. Ms. McKee's own statements and conduct confirming that she considers Mr. Cosby a wonderful, lovely person who treated her well, and lauding about her association with Mr. Cosby, can easily be found with just a few clicks on Google. Instead, a mountain of evidence undermining your source's reliability was ignored by the *Daily News* in its malicious quest to publish a salacious defamatory "scoop." It is obvious that the *Daily News* did not even bother to do something as simple as a web search before recklessly accusing my client of rape and publishing its "EXCLUSIVE" article **"RAT PACK ATTACK | Bill Cosby accused of raping ex-girlfriend of Sammy Davis Jr."** (the "Story").

Your source claims that 40 years ago, during the time that she says she was Sammy Davis, Jr.'s "road wife," my client allegedly raped her standing at the door of a Detroit hotel room after she brought him ribs, *following which she went to a party with him*. The *Daily News* was so intent on smearing my client that it recklessly labeled as "rape" an alleged sexual encounter in the 1970's during which (according to your source's own story) the accuser *never objected, never said no, did not attempt to end the encounter, went to a party that night with her alleged attacker (and drove him to the party in her own car), and remained his friend and traded on his name for 40 years.*

This Story confirms that the *Daily News* maintains virtually no journalistic standard or credibility threshold for publishing the stories of anyone who approaches your paper with accusations about my client. The *Daily News* has sunk to a new low in what it is passing off as "journalism." Unfortunately, the *Daily News* is not alone. The media has consistently refused to look into or publish information about various women whose stories are contradicted

Cyna J. Alderman, Esq.
Ms. Nancy Dillon
Re:    Bill Cosby / *New York Daily News*, Daily News, L.P., *et al.*
December 22, 2014
Page 3

---

by their own conduct or statements.  The media has routinely ignored relevant information including:

- Criminal backgrounds of various accusers, such as arrests for lying to police and other crimes involving dishonesty

- Information from third party sources disputing the credibility of sources and their accusations

- Independent evidence proving accusations impossible

It is obvious that either the *Daily News* failed to do even the most simplistic and rudimentary investigation of Ms. McKee's story before rushing to publish her four-decade-old but never-before-heard tale, or alternatively, that the *Daily News* actually *knew* that Ms. McKee's own prior statements and conduct are totally inconsistent with and undermine her new story, but published the "rape" story anyway.  In either case, the *New York Daily News* published its story with Constitutional malice.

To say that Ms. McKee is not a reliable source is a gross understatement.  Ample published information readily available to the *Daily News* completely undermines this story.  The fact that the *Daily News* ran this Story reveals that, like many of its media cohorts, its publication standards have sunk to depths that in past decades even supermarket tabloids would not deign to sink.  Now, the media's approach is to publish virtually any tale "no questions asked" told by anyone willing to vouch for it, without questioning their motivations, their pasts, or even the criminal records of some accusers.  This is not journalism.  Such biased reporting is outrageous and unconscionable.  It also gives rise to substantial liability.

The evidence that the *Daily News* ought to have found and considered before running this defamatory Story runs that gamut from recent published interviews, to praise posted on social media, to professional promotional listings.   If someone was treated improperly, was assaulted, or was even raped, it is inconceivable that they would make these laudatory, positive statements about the alleged perpetrator.  Why would someone who was allegedly raped "like" a comedy video by their alleged attacker?   Why would someone who claims to have been assaulted have as their top Google+ post an episode of a television series acting along side her purported attacker?  Why would she list her appearance on his show at the top of her list of professional accomplishments?[9]  It defies credulity.  Tellingly, the *Daily News* never bothered to ask such questions, quick to advance its agenda of labeling my client a rapist.

The glaring inconsistently between Ms. McKee's past affectionate public sentiments about my client and what she is now claiming was alone a basis to question her veracity and render her an unreliable source.[10]  Moreover, Ms. McKee's own description of her *private*

words and conduct at the time of the alleged incident also contradicts the *Daily News'* Story. When you add to the mix Ms. McKee's constant name-dropping of her association with Mr. Cosby, and her "liking" of a comedy Cosby video a year ago and reaching out to get in touch with an old friend, and her recent proud post of a video clip showing her acting alongside Mr. Cosby in the 1970's, the enormous disparity between the *Daily News* Story and her public words and conduct establish that the Story was published recklessly and with Constitutional malice.

This defamatory Story is the latest example of your coverage demonstrating that your newspaper maintains virtually no standard or credibility threshold for publishing the stories of anyone who approaches the *Daily News* with accusations about my client, no questions asked. The media blindly ignores the dubious background of sources, ignores the absence of evidence to corroborate decades-old accusations, and ignores the existence of contradictory evidence undermining its sources' claims or reliability. Meanwhile, as has been amply publicized and commented upon by legal scholars, my client risks being sued for defamation (as has already occurred) if he so much as denies any scurrilous accusations made against him.

Like other irresponsible media, the *Daily News* is recklessly clamoring to add to the din of "me too" claims without investigating the reliability of its sources. This exposes the *Daily News* to very significant liability.[11]

"'Freedom of the press under the First Amendment does not include absolute license to destroy lives or careers.'"[12] The *Daily News* should stop resorting to "scandal sheet" journalism. It will have only itself to blame if it finds itself in court attempting to defend its ongoing pattern of recklessly and maliciously publishing outlandish stories about my client fitting with its predetermined smear agenda. Publication of a retraction and correction of the defamatory Story is demanded.

This does not constitute a complete or exhaustive statement of all of my client's rights or claims. Nothing stated herein is intended as, nor should it be deemed to constitute a waiver or relinquishment, of any of my client's rights or remedies, whether legal or equitable, all of which are hereby expressly reserved. This letter is a confidential legal communication and is not for publication.

Sincerely,

MARTIN D. SINGER

MDS/lg

cc:    Mr. William H. Cosby

Cyna J. Alderman, Esq.
Ms. Nancy Dillon
Re:    Bill Cosby / *New York Daily News,* Daily News, L.P., *et al.*
December 22, 2014
Page 5

1. "She counts Billy Crystal and Bill Cosby as friends. 'People in show business are out there meeting so many wonderful people, and it's very common to be in and out of affairs, unless you're married. You're in the limelight, people are after you, men are chasing after you.  And these were very wonderful, lovely men.  They treated me wonderfully.'  Those who are still alive today … McKee said she maintains a friendship with.  'I didn't burn any bridges,' she said.  'As far as I'm concerned, my life has been wonderful.  It''sbeen blessed with lovely, wonderful men.  I was free, and single and I had fun and I had a wonderful life.''" *C & G Newspapers, "Former Vegas showgirl reflects on wild youth"* (July 7, 2010)
<http://www.candgnews.com/Homepage-Articles/2010/07-07-10/Katherine-McKee-showgirl.asp>

2. <https://www.youtube.com/user/kathrinemckee>
<https://www.youtube.com/watch?v=cUZgOlcVrnc>

3. "McKee is excited to share her experiences in Hollywood with the people of Detroit and bring to Michigan some of the many stars and celebrities she has known and worked with throughout her long career in show business.  McKee, herself, has enjoyed a 40-year career in show business that has taken her around the globe.  **She has worked with such legends as** Richard Pryor, Sammy Davis Jr., **Bill Cosby** and Clifton Davis." *Encore Michigan* (Dec. 16-22, 2014)
<http://www.encoremichigan.com/article.html?article=3251>

4. *C & G Newspapers, "Former Vegas showgirl reflects on wild youth"* (July 7, 2010)
<http://www.candgnews.com/Homepage-Articles/2010/07-07-10/Katherine-McKee-showgirl.asp>

5. <https://plus.google.com/113662289241530517375/posts>

6. *C & G Newspapers, "Former Vegas showgirl reflects on wild youth"* (July 7, 2010)
<http://www.candgnews.com/Homepage-Articles/2010/07-07-10/Katherine-McKee-showgirl.asp>

7. *People Magazine, "After Singing Her Own Blues, Lonette Mckee Finds a Perch as Off Broadway's Billie Holiday"* (November 3, 1986)
<http://www.people.com/people/archive/article/0,,20094908,00.html>

8. PopMatters, *"Giving Us Something We Can Feel: An Interview with Lonette McKee"* (August 11, 2010)
<http://www.popmatters.com/feature/129327-giving-us-something-we-can-feel-an-interview-with-lonette-mckee/>

9. <http://www.kathymckeecasting.com/biography.html>

10. *See Suzuki Motor Corp. v. Consumers Union of United States, Inc.,* 330 F.3d 1110, 1134 (9th Cir. 2003) ("the jury may nevertheless infer that the publisher was aware of the falsity if it finds that there were 'obvious reasons to doubt' the accuracy of the story, and that the defendant did not act reasonably in dispelling those doubts.").

*See* Exhibit B.

*Alleged Publication of the Singer Letter.*  According to Plaintiff, on or about December 24, 2014,[2] the *Daily News* allegedly published a second news article in response to the Singer Letter that apparently "reported" on the content of the Singer Letter.  As with the Singer Letter, Plaintiff does not attach either of the *Daily News* articles referenced in her complaint.  In fact, it is unclear whether the second *Daily News* article actually exists.  It is not readily available on the internet nor is it included in the *Daily News* electronic archives for either December 24, 2014 or 2015.[3]

## ARGUMENT

### I.    FOR PURPOSES OF THIS MOTION TO DISMISS, THE COURT SHOULD LOOK TO AND APPLY NEVADA'S LAW OF DEFAMATION, AS WELL AS THE FIRST AMENDMENT.

Under Rule 12(b)(6), a complaint should be dismissed for "failure to state a claim upon which relief can be granted" if it fails to set forth sufficient factual allegations that, taken as true, set forth a plausible claim for relief.  Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plausibility standard does not require a showing of probability that a claim has merit, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), but it does require that a pleading show "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.

Here, to determine whether Plaintiff has stated a defamation claim, this Court has previously ruled that "the law of the state where the defamed person was domiciled at the time of publication applies 'if the matter complained of was published in that state.'"  *Green v. Cosby*, No. CV 14-30211-MGM, 2015 WL 5923553, at *5 (D. Mass. Oct. 9, 2015).  Accordingly,

---

[2] Plaintiff's complaint alleges the second *Daily News* article was published on December 24, 2015 rather than December 24, 2014.  *See* Compl. ¶¶ 25, 30.  However, this appears to be a typographical error as Plaintiff filed her complaint on December 21, 2015, 3 days before the second *Daily News* article was purportedly published.

[3]  *See* http://www.nydailynews.com/archives

because Plaintiff alleges she is a resident of the State of Nevada (*see* Compl. ¶ 1), and because Plaintiff alleges that statements contained in the Singer Letter were published "broadly to the world at large" (*id.* ¶ 31), this Court applies Nevada law to determine whether Plaintiff has properly alleged a defamation claim.  *See Green*, 2015 WL 5923553, at *5 ("The statements at issue in this case were published nationally, so the court applies the law of the state in which each Plaintiff was domiciled when the alleged publication occurred.").  In addition, the First Amendment "place[s] limits on the application of the state law of defamation." *Riley v. Harr*, 292 F.3d 282, 288 (1st Cir. 2002) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 14 (1990)).

Applying these laws, if the complaint does not set forth the necessary factual allegations to recover a claim for defamation, this Court should dismiss the complaint in its entirety.  *See List v. Bank of Am., N.A.*, 790 F.3d 20, 23 (1st Cir. 2015) ("Dismissal for failure to state a claim is appropriate if the complaint does not set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.") (internal quotation marks omitted); *see also, e.g., Hill v. Cosby*, No. 15CV1658, 2016 WL 491728, at *9 (W.D. Pa. Feb. 9, 2016) (dismissing defamation claim against Mr. Cosby, *with prejudice*, because "allowing Plaintiff to amend her Complaint would be futile").

## II.    PLAINTIFF FAILS TO ALLEGE SUFFICIENT FACTS FOR THIS COURT TO REASONABLY INFER THAT THE SINGER LETTER CONTAINS ANY "FALSE AND DEFAMATORY" STATEMENTS.

As an initial matter, Plaintiff's defamation claim fails because she has failed to allege in her complaint both the content and the context of the alleged defamatory statement.  To state a defamation claim under Nevada law, Plaintiff must allege: (1) a false and defamatory statement; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and

(4) actual or presumed damages. *See Clark Cty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 125 Nev. 374, 385, 213 P.3d 496, 503 (2009) (citations omitted).  Although Plaintiff is not required to set forth the alleged defamatory statement verbatim, *see Grant v. Target Corp.*, 126 F. Supp. 3d 183, 192 (D. Mass. 2015) (citations omitted), the complaint must allege the defamatory statements "in their entirety and in context" in order for this Court to reasonably infer that the remarks "are susceptible of a defamatory meaning."  *See Shafer v. City of Boulder*, 896 F. Supp. 2d 915, 940 (D. Nev. 2012) (alleged defamatory statements "must be viewed in their entirety and in context to determine whether they are susceptible of a defamatory meaning."); *see also Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 130-31 (1st Cir. 1997) ("Certain excesses of language cannot ground a defamation claim because, *in context,* those excesses involve only puffery or epithets, and thus are insufficiently fact-based.") (emphasis in original).

Here, although Mr. Cosby is "entitled to know[] the precise language challenged as defamatory," *see Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 728 n.6 (1st Cir. 1992), Plaintiff's complaint fails to provide such language and also fails to allege sufficient context to determine whether the defamatory statements at issue are "susceptible of a defamatory meaning."  *See Shafer*, 896 F. Supp. 2d at 940.

Nor is it sufficient for Plaintiff to simply allege that the statements contained in the Singer Letter are unprivileged and unprotected.  Context is required before this Court may reasonably infer that Mr. Singer's statements are defamatory.  *See Phantom Touring*, 953 F.2d at 727-28 (holding that courts are "obliged to make an independent examination of the whole record," *i.e.,* a "safety valve determination," to ensure that the defamation claim does not "constitute a forbidden intrusion on the field of free expression.") (internal citations and quotations omitted); *see also Flowers v. Carville*, 310 F.3d 1118, 1130-31 (9th Cir. 2002)

("[W]here a plaintiff seeks damages . . . for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required.") (citations omitted).

## III.    THE SINGER LETTER CONTAINS ONLY HIS CONSTITUTIONALLY PROTECTED OPINIONS.

Putting aside the failure of Plaintiff to satisfy essential procedural requirements in her complaint, Plaintiff's allegations also fail on the merits.  Plaintiff alleges that the Singer Letter called her a liar.  *See* Compl. ¶ 23.  Standing alone, this is nothing more than an allegation that the Singer letter expressed an opinion, and does not support a claim for defamation.  *See, e.g., Riley*, 292 F.3d at 291-92 (holding that a statement that the plaintiff "had lied" was not actionable as defamation); *Downs v. Schwartz*, No. CIV.A. 14-630 2015 WL 4770711, at *16 (E.D. Pa. Aug. 12, 2015 (dismissing a defamation suit where a defendant publically responded to plaintiff's accusations as "completely baseless"); *Gotbetter v. Dow Jones & Co.*, 687 N.Y.S.2d 43, 44 N.Y. App. Div. 1999) (calling plaintiff's allegations "baseless" was "not actionable [as defamation] because the cited statement [was] merely an opinion").  Indeed, mere "rhetorical hyperbole" is not actionable; "[t]he law provides no redress for harsh name-calling."  *See Flowers*, 310 F.3d at 1127.

To avoid dismissal, Plaintiff must be able to demonstrate that the Singer Letter was more than a statement of Mr. Singer's opinion.  As the First Circuit has held, "even a *provably false statement is not actionable* if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts."  *See Riley,* 293 F.3d. at 289 (emphasis added).

A.    **Singer's Opinion That The *Daily News* Abandoned Journalistic Standards Does Not Defame Plaintiff.**

Despite Plaintiff's allegations, the Singer Letter *does not* call Plaintiff a liar.  Instead, the Singer Letter expresses Mr. Singer's constitutionally protected opinion that the *Daily News* published the Story without conducting basic research.  According to the Singer Letter, a Google search would have revealed that the statements in the Story were "contradicted by [Plaintiff's] own prior published statements," and that Plaintiff's public "statements and conduct confirm[ed] that she considers Mr. Cosby a wonderful, lovely person who treated her well, and laud[ed] about her association with Mr. Cosby."  *See* Exhibit B at 2.

The Singer Letter detailed the facts upon which Mr. Singer based his constitutionally protected opinions, "thus making it clear that the challenged statements represent his own interpretation of those facts."  *See Piccone*, 785 F.3d at 773-74.  The Singer Letter referred to Plaintiff "liking" one of Mr. Cosby's YouTube comedy videos and posting a fond message seeking to contact him in 2013.  *See* Exhibit B at 1.  Mr. Singer also cited a promotional webpage for an acting class, set for December 16, 2014 through December 22, 2014, in which Plaintiff touts her association with Mr. Cosby saying she "enjoyed a 40-year career in show business" and has "worked with such legends as … Bill Cosby."  *See id.*  The letter also noted that, in December 2014, Plaintiff posted a 1970 video clip of her acting with Mr. Cosby on *The Cosby Show* on her webpage captioned, "That's me with Bill Cosby 1970."  *See id.* at 2.

In her complaint, Plaintiff says the Singer Letter opined that Plaintiff's allegations "defied credibility."  But the point of the letter is to criticize the *Daily News'* reporting.  Based on publicly available information, the Singer Letter posed a series of questions: *e.g.*, "Why would someone who was allegedly raped 'like' a comedy video by their alleged attacker?" and "why would [Plaintiff] list her appearance on [Mr. Cosby's] show at the top of her list of

professional accomplishments?"  *See* Exhibit B at 3.  With these questions, the Singer letter set

forth the constitutionally protected opinion that "the *Daily News* never bothered to ask such

questions, quick to advance its agenda of labeling [Mr. Cosby] a rapist."  *See id.* at 3; *see also*

*Piccone*, 785 F.3d at 774 ("The First Amendment generally protects statements of opinion where

the speaker 'outlines the facts available to him, thus making it clear that the challenged

statements represent his own interpretation of those facts and leaving the [listener] free to draw

his own conclusions.'" (citing *Riley*, 292 F.3d at 289)).

### B.    The Singer Letter's Statements About Plaintiff Also Protected Opinion.

But even if—in the course of its discussion of the *Daily News'* Story—the Singer Letter

were somehow construed to have called Plaintiff a liar, the Singer Letter is still expressing a

protected opinion.  The Singer Letter noted that Plaintiff had previously and publically admitted

that she has done "a lot of lying."  *See* Exhibit B at 1, *citing* Exhibit C at 2.  Further, the Singer

Letter specifically identifies the lies to which it refers:  Plaintiff admitted to lying about her

ethnicity, denying her African-American heritage because it "wasn't accepted" to "have black

blood in you."  *See id*.  Plaintiff lied, and "said [she] was white" because it was "easier to get

doors to open."  *Id*.  Plaintiff also admitted to lying about her age, saying she "was 23 years old,

but [she] was 16."  *Id.*  Plaintiff "had to do a lot of lying" and, apparently, "[t]he lies landed her a

job."  *See id.*

By citing Plaintiff's own public statements that she repeatedly lied to advance her

personal and monetary interests (*see* Exhibit B at 1; Exhibit C at 2), Mr. Singer "outline[d] the

facts available to him, thus making it clear that the challenged statements represent his own

interpretation of those facts."  *See Piccone v. Bartels*, 785 F.3d 766, 773-74 (1st Cir. 2015).

Accordingly, any alleged statement in the Singer Letter that opined on Plaintiff's tendency to lie

is protected by the First Amendment as constitutionally protected opinions.  *Id.*

## IV.    THE SINGER LETTER IS AN ABSOLUTELY AND CONDITIONALLY PRIVILEGED COMMUNICATION, WHICH IS BARRED FROM DEFAMATION LIABILITY UNDER NEVADA LAW.[4]

### A.    The Singer Letter Is Protected By The Litigation Privilege.

The content of the Singer Letter also establishes that it is protected as privileged under

Nevada law.  To successfully maintain a claim for defamation under Nevada law, Plaintiff must

assert facts sufficient for this Court to reasonably infer that the Singer Letter to the *Daily News*

was an "*unprivileged* publication to a third person."  *See Clark*, 125 Nev. at 385 (emphasis

added).  Nevada law recognizes the "long-standing common law rule that communications

[made] in the course of judicial proceedings [even if known to be false] are absolutely

privileged."  *See id.* at 382, *citing Circus Circus Hotels v. Witherspoon*, 99 Nev. 56, 60, 657 P.2d

101, 104 (1983).  Here, the Singer Letter is protected by Nevada's absolute privilege, which

"applies to letters written in anticipation of litigation."  *See Sahara Gaming Corp. v. Culinary*

*Workers Union Local 226*, 115 Nev. 212, 217-18, 984 P.2d 164, 167 (1999).

On its face, the Singer Letter was prepared and sent by Mr. Cosby's "litigation counsel"

to the *Daily News'* General Counsel as a "Confidential Legal Notice."  *See* Exhibit B at 1.  The

---

[4] Nevada courts have found that "privileges are defenses to a defamation claim," and thus, "should not be considered on [a motion to dismiss] challenge."  *See Lubin v. Kunin*, 117 Nev. 107, 116, 17 P.3d 422, 428 (2001). Federal courts sitting in diversity, however, such as this Court, apply *federal* procedural law.  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).  As the Nevada Supreme Court has held, "the applicability of the absolute privilege is a matter of law for the court to decide."  *Clark*, 125 Nev. 374, 382, 213 P.3d 496, 502 (2009). Although Plaintiff generally alleges that the statements in the Singer Letter are not privileged (*see* Compl. ¶ 35), that bald assertion is expressly contradicted by the actual content of the Singer Letter (*see* Exhibit B).  Accordingly, this Court may properly dismiss Plaintiff's complaint pursuant to the federal procedural law.  *See Gasperini*, 518 U.S. at 427; *see also Carden v. Klucznik*, 775 F. Supp. 2d 247, 249 (D. Mass. 2011) ("On a motion to dismiss, a court must accept all factual allegations in the complaint as true.  ***But a court will not accept as true any facts that are "conclusively contradicted by plaintiffs' concessions or otherwise."***") (citing *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir.1987) (emphasis added)).

Singer Letter noted that the *Daily News'* publication of the Story was consistent with what he believed was an "ongoing pattern of recklessly and maliciously publishing outlandish stories about [Mr. Cosby]." *See id* at 4. After opining that the Story was consistent with the media's refusal "to look into or publish information about various women whose stories are contradicted by their own conduct or statements" (*see id.* at 2-3), the Singer Letter put the *Daily News* on legal notice that the "enormous disparity between the *Daily News* Story and [Plaintiff's] public words and conduct establish that the Story was published recklessly and with Constitutional malice." *See id.* at 2. The letter then demanded that the *Daily News* publish a retraction and correction to the Story, or otherwise face "substantial" and "very significant liability" based on Mr. Cosby's legal and equitable rights. *See id.* at 3-4.

The purpose of the absolute privilege is to protect Mr. Singer and Mr. Cosby against the very claim that Plaintiff seeks to bring here, that is, "freedom from liability for defamation where civil or criminal proceedings are seriously considered." *See Clark*, 125 Nev. at 383*, citing* Restatement (Second) of Torts § 587 cmts. a, e (1977). Because "the scope of the absolute privilege is broad," the Nevada Supreme Court counsels this Court to "resolve any doubt in favor of a broad application" of the privilege. *See id.* at 382, *citing Fink v. Oshins*, 118 Nev. 428, 433-34, 49 P.3d 640, 644 (2002).[5]

Accordingly, this Court should dismiss Plaintiff's complaint, *with prejudice*, because on its face, the Singer Letter rebuts any suggestion that it was an "unprivileged publication" to a

---

[5] Plaintiff might try to confuse this issue by asserting that "the absolute privilege does not shield defamatory statements about the opposing party made by a litigant to the news media." *See, e.g., Grand Canyon Skywalk Dev., LLC v. Cieslak*, No. 2:13-CV-596-JAD-GWF, 2015 WL 1805055, at *6 (D. Nev. Apr. 20, 2015). This contention is of no moment here because, unlike a general statement about Plaintiff made to the news media, the Singer Letter is addressed to the *Daily News* and threatened legal action against the *Daily News* based on its own conduct. The fact that the statements involve Plaintiff but are nevertheless directed to cure the *Daily News'* conduct supports Mr. Cosby's position that the absolute privilege applies here. *See Circus Circus*, 99 Nev. at 61 ("The defamatory material need not be relevant in the traditional evidentiary sense, but need have only "some relation" to the proceeding; so long as the material has some bearing on the subject matter of the proceeding, it is absolutely privileged.").

third party. *See Lister*, 790 F.3d at 23 ("Dismissal for failure to state a claim is appropriate if the complaint does not set forth factual allegations […] necessary to sustain recovery under some actionable legal theory.") (internal quotation marks omitted).

### B.   The Singer Letter Is Protected By The Privilege Of Reply.

Plaintiff's claim for defamation must also fail because the Singer Letter is protected by the common law conditional privilege of reply. *See State v. Eighth Judicial Dist. Court ex rel. Cty. of Clark*, 118 Nev. 140, 149, 42 P.3d 233, 239 (2002). The common law privilege of reply "grants those who are attacked with defamatory statements a limited right to reply." *See id.* Plaintiff accused Mr. Cosby of sexual misconduct. *See* Exhibit A. Accordingly, Mr. Cosby is afforded a privilege to reply and "rebut" Plaintiff's accusations, while at the same time comment upon Plaintiff. *See State v. Eighth*, 118 Nev. at 149 ("If I am attacked in a newspaper, I may write to that paper to rebut the charges, and I may at the same time retort upon my assailant, when such retort is a necessary part of my defense, or fairly arises out of the charges he has made against me."). To the extent the Singer Letter rebuts Plaintiff's accusations of sexual misconduct (*see* Compl. ¶¶ 23, 25), as well as discusses the reliability of the Story based on Plaintiff's own contradictory conduct and public admissions of lying to advance her own personal and monetary interests, those statements are protected by the common law conditional privilege of reply. *See State*, 118 Nev. at 149. Consequently, Plaintiff has not alleged sufficient facts for this Court to reasonably infer that the Singer Letter is an "unprivileged publication," and thus, this Court should dismiss Plaintiff's complaint in its entirety, *with prejudice*.

### CONCLUSION

For the reasons set forth above, this Court should grant Mr. Cosby's motion and dismiss Plaintiff's complaint in its entirety, *with prejudice*.

Dated:  June 10, 2016                    Respectfully submitted,


By: */s/ Marshall M. Searcy III*
Christopher Tayback (*pro hac vice*)
Marshall M. Searcy III (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000; Fax (213) 443-3100
Email: christayback@quinnemanuel.com
       marshallsearcy@quinnemanuel.com

Alexander J. Merton (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
777 6th St. NW, 11th Floor
Washington, DC 20001
(202) 538-8000; Fax (202) 538-8100
Email: ajmerton@quinnemanuel.com

John J. Egan
Robert L. Quinn
Lauren F. Olanoff
EGAN, FLANAGAN & COHEN, PC
67 Market Street
PO Box 9035
Springfield, MA 01102-9035
(413) 737-0260; Fax (413) 737-0121
Email: jje@efclaw.com
       rlquinn@eganflanagan.com
       lfo@efclaw.com

*Attorneys for William H. Cosby, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that, on June 10, 2016, I caused the foregoing document, along with the corresponding exhibits referenced therein, to be electronically filed using the CM/ECF, which will automatically transmit Notice of Electronic Filing to the attorneys of record as follows:

F. William Salo
501 East 87th Street, No. 11-F
New York, NY 10128

Andrew M. Abraham
Abraham & Associates, P.C.
2 Center Plaza, Suite 620
Boston, MA 02108

_____ */s/ Marshall M. Searcy III* _____
Marshall M. Searcy III